IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HISTEEL CO., LTD,<br>    Plaintiff,<br>  and<br>DONG-A-STEEL CO., LTD.<br>    Plaintiff-Intervenor,<br>  v.<br>UNITED STATES,<br>    Defendant,<br>  and<br>NUCOR TUBULAR PRODUCTS INC.,<br>    Defendant-Intervenor. | Before: Hon. Gary S. Katzmann, Judge<br><br>Court No. 22-00142 |

**RESPONSE TO MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Jake R. Frischknecht, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Defendant-Intervenor Nucor Tubular Products Inc.*

**Dated: December 21, 2022**

# TABLE OF CONTENTS

                                                                                 **Page**

I.    INTRODUCTION ............................................................................................... 1

II.   RULE 56.2 STATEMENT .................................................................................. 1

      A.    Administrative Decision Under Review....................................................1

      B.    Issues Presented.........................................................................................2

III.  BACKGROUND ................................................................................................. 2

IV.  ARGUMENT....................................................................................................... 5

      A.    Standard of Review ...................................................................................5

      B.    Plaintiffs Failed to Exhaust Their Administrative Remedies Regarding the Cohen's *d* Test ..................................................................6

      C.    Cohen's *d* Test is Reasonable...................................................................8

V.    CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Boomerang Tube LLC v. United States*,
   856 F.3d 908 (Fed. Cir. 2017)...................................................................................7

*Cisco Sys., Inc. v. Int'l Trade Comm'n*,
   873 F.3d 1354 (Fed. Cir. 2017)...................................................................................5

*Corus Staal BV v. United States*,
   502 F.3d 1370 (Fed. Cir. 2007)................................................................................7, 8

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*,
   216 F.3d 1027 (Fed. Cir. 2000)...................................................................................8

*Downhole Pipe & Equip., L.P. v. United States*,
   776 F.3d 1369 (Fed. Cir. 2015)...................................................................................5

*Essar Steel, Ltd. v. United States*,
   753 F.3d 1368 (Fed. Cir. 2014)...................................................................................6

*Itochu Bldg. Prods., Co. v. United States*,
   163 F. Supp. 3d 1330 (Ct. Int'l Trade 2016) ...............................................................5

*JBF RAK LLC v. United States*,
   790 F.3d 1358 (Fed. Cir. 2015)...................................................................................7

*JCM, Ltd. v. United States*,
   210 F.3d 1357 (Fed. Cir. 2000)...................................................................................6

*Kingdomware Techs., Inc. v. United States*,
   579 U.S. 162 (2016)....................................................................................................7

*McKart v. United States*,
   395 U.S. 185 (1969)..................................................................................................6, 7

*Micron Tech., Inc. v. United States*,
   243 F.3d 1301 (Fed. Cir. 2001)...................................................................................5

*Mittal Steel Point Lisas Ltd. v. United States*,
   548 F.3d 1375 (Fed. Cir. 2008)................................................................................6, 7

*Palladian Partners, Inc. v. United States*,
   783 F.3d 1243 (Fed. Cir. 2015)................................................................................6, 7

*Parisi v. Davidson*,
    405 U.S. 34 (1972) ............................................................................................................7

*PSC VSMPO-Avisma Corp. v. United States*,
    688 F.3d 751 (Fed. Cir. 2012) ...........................................................................................6

*Sandvik Steel Co. v. United States*,
    164 F.3d 596 (Fed. Cir. 1998) ...........................................................................................7

*Sharp Corp. v. United States*,
    837 F.2d 1058 (Fed. Cir. 1988) .........................................................................................6

*Stupp Corp. v. United States*,
    5 F.4th 1341 (Fed. Cir. 2021) ...................................................................................4, 8, 9

*United States v. L.A. Tucker Truck Lines, Inc.*,
    344 U.S. 33 (1952) ............................................................................................................7

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ....................................................................................................5

19 U.S.C § 1675(a)(3)(A) ...........................................................................................................3

28 U.S.C. § 2637(d) ...................................................................................................................7

**Regulations**

19 C.F.R. § 351.301(c)(5) ..........................................................................................................3

19 C.F.R § 351.309(c)(2) ...........................................................................................................7

**Administrative Materials**

*Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From the Republic of Korea*, 87 Fed. Reg. 20,390 (Dep't Commerce Apr. 7, 2022) ...............................1

*Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From the Republic of Korea*, 86 Fed. Reg. 55,582 (Dep't Commerce Oct. 6, 2021) ...............................3

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
    85 Fed. Reg. 68,840 (Dep't Commerce Oct. 30, 2020) ...................................................2

**Other Authorities**

Paul D. Ellis, *The Essential Guide to Effect Sizes: Statistical Power, Meta Analysis, and the Interpretation of Research Results* (Cambridge University Press, 2010) ...................................................................................................................9

I.      **INTRODUCTION**

On behalf of Nucor Tubular Products Inc. ("Nucor Tubular"), we respectfully submit the following response to the October 17, 2022 opening brief filed by Plaintiff, HiSteel Co., Ltd. ("HiSteel") and Plaintiff-Intervenor, Dong-A Steel ("DOSCO" and together with HiSteel, "Plaintiffs"). *See* Br. of Pl. HiSteel in Supp. of Mot. for J. on the Agency R. (Oct. 17, 2022), ECF No. 43 and Br. of Pl. DOSCO in Supp. of Mot. for J. on the Agency R. (Oct. 17, 2022), ECF No. 45. For the reasons discussed below, the motions of Plaintiffs should be denied, and the Court should enter judgment for Defendant United States. We incorporate by reference the arguments made in the brief of Defendant United States.

II.     **RULE 56.2 STATEMENT**

    A.      **Administrative Decision Under Review**

The administrative determination challenged in this case is the U.S. Department of Commerce's ("Commerce") final affirmative determination in the September 1, 2019 to August 31, 2020 administrative review of the antidumping duty ("AD") of Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes ("HWR") from the Republic of Korea. *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From the Republic of Korea*, 87 Fed. Reg. 20,390 (Dep't Commerce Apr. 7, 2022) (final results of antidumping duty admin. rev.; 2019-2020), P.R. 243 and accompanying Issues and Decision Memorandum, P.R. 241 ("I&D Memo").[1]

---

[1] Throughout this brief, references to confidential and public record documents listed in the administrative record indices filed on July 18, 2022 are designated by "C.R.," or "P.R.," followed by the appropriate record number.

### B. Issues Presented

#### 1. Whether Plaintiff and Plaintiff-Intervenor failed to exhaust its administrative remedies regarding the Cohen's *d* test?

Yes. Plaintiffs failed to exhaust their administrative remedies because they did not raise these arguments before Commerce. Plaintiffs failed to place academic literature and factual information on the record to support their arguments against the Cohen's *d* test, and did not raise these arguments in their case brief. This failure prevented Commerce from performing functions within its special competence, including making a factual record and applying its expertise. Thus, Plaintiffs are precluded from raising these arguments before the court.

#### 2. Whether the Cohen's *d* test as applied is a viable statistical test?

Yes. As Commerce has explained extensively in litigation that Plaintiffs fail to mention, the assumptions of normality, equal variance and sufficient sample size are irrelevant to Commerce's analysis because Commerce has the entire population of sales.

### III. BACKGROUND

#### A. Chronology of Events

On October 30, 2020, Commerce initiated an administrative review on the AD order of HWR from Korea. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 68,840 (Dep't Commerce Oct. 30, 2020), P.R. 16. Commerce selected Plaintiff and Plaintiff-Intervenor as mandatory respondents. Memorandum from Alice Maldonado, Senior Analyst, AD/CVD Operations, Off. II, to Jill E. Pollack, Director, AD/CVD Operations, Off. II, re: *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea: Selection of Respondents for Individual Review* (Dec. 3, 2020), P.R. 21, C.R. 3. The review proceeded normally as Commerce gathered information through questionnaire responses.

On May 7, 2021, Commerce extended the preliminary determination deadline to September 30, 2021, consistent with 19 U.S.C § 1675(a)(3)(A). Under Commerce's regulations, the deadline for factual information was August 31, 2021. 19 C.F.R. § 351.301(c)(5). On September 30, 2021, Commerce reached its preliminary determination that relied on the Differential Pricing Analysis and Cohen's *d* test. *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From the Republic of Korea*, 86 Fed. Reg. 55,582 (Dep't Commerce Oct. 6, 2021) (prelim. results of antidumping duty admin. rev.), P.R. 210 and accompanying Preliminary Decision Memorandum, P.R. 207 at 5-7 ("Prelim. Memo"); *see also* Memorandum from Alice Maldonado, Analyst, AD/CVD Operations, Off. II, to The File, re: *Calculations for HiSteel Co., Ltd. for the Preliminary Results*, P.R. 208, C.R. 200-205 at 2; Memorandum from Jacob Garten, Analyst, AD/CVD Operations, Off. II, to The File, re: *Calculations for Dong-A Steel Co., Ltd./SeAH Steel Corporation for the Preliminary Results* (Sept. 30, 2021), P.R. 209, C.R. 206-211 at 5-6.

Throughout the entire course of the review, Plaintiffs did not attempt to submit any academic literature or factual information related to the Cohen's *d* test. In its administrative case brief, Plaintiffs failed to mention any of the academic literature cited in its brief before this Court. In particular, neither of the Plaintiffs provided or cited to any of the following:

- Coe, *It's The Effect Size, Stupid: What "Effect Size" Is and Why It Is Important*, 2002
- Cohen, Statistical Power Analysis For The Behavioral Sciences (2d ed. 1988)
- Grissom and J. Kim, Effect Sizes For Research: Univariate And Multivariate Applications (2d ed. 2012).
- K. Hogarty, J. Kromrey, *We've Been Reporting Some Effect Sizes:Can You Guess What They Mean?*, 2001

After briefing, Commerce made its final determination and continued to rely on the Cohen's *d* test and the Differential Pricing Analysis. I&D Memo at 14-21. *See* Memorandum from Alice Maldonado, Analyst, AD/CVD Operations, Off. II, to Rebecca Janz, Program Manager,

AD/CVD Operations, Off. II, re: *Antidumping Duty Administrative Review of Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea: Calculations for HiSteel Co., Ltd. for the Final Results* (Apr. 1, 2022), P.R. 242, C.R. 229-234 at 2-3 ("HiSteel Calc. Memo"); Memorandum from Jacob Garten, Analyst, AD/CVD Operations, Off. II, to Rebecca Janz, Program Manager, AD/CVD Operations, Off. II, re: *Antidumping Duty Administrative Review of Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea: Calculations for Dong-A Steel Co., Ltd./SeAH Steel Corporation for the Final Results* (Apr. 1, 2022), P.R. 244, C.R. 235-240 at 4 ("DOSCO Calc. Memo").

The U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") first questioned the statistical validity of the Cohen's *d* test as applied to dumping calculations on July 15, 2021. *Stupp Corp. v. United States*, 5 F.4th 1341 (Fed. Cir. 2021). Thus, there were 47 days, nearly 7 weeks, between the issuance of *Stupp* and the factual information deadline in the underlying review.

### B. Differential Pricing Analysis

To calculate antidumping duty margins, Commerce typically compares the weight-averaged "normal value" (the respondent's above-cost home market prices) with the weight-averaged "export price" (the respondent's U.S. prices for the same or similar goods). *See, e.g.*, Prelim. Memo at 4-5. However, Commerce will compare weight-averaged normal value with the prices of individual U.S. sales where it finds that there is a pattern of U.S. prices that differ significantly among purchasers, regions, or time periods. *Id.* at 5.

To determine whether such a pattern exists, Commerce utilizes a two-part methodology rooted in statistical analysis. *Id.* at 5-6. Here, Commerce found that the vast majority of Plaintiffs' U.S. sales, by value, passed the Cohen's *d* test, a statistical tool for measuring the significance of the difference between the mean prices of a test group of transactions and a comparison group. I&D Memo at 14. With regard to Plaintiff HiSteel, Commerce found that there was at least a 25%

relative change between the weighted-average dumping margins calculated using its standard methodology and its alternative, average-to-transaction methodology. HiSteel Calc. Memo at 3. For Plaintiff-Intervenor DOSCO, Commerce found that the use of the alternative comparison method moved the weighted-average dumping margin across the *de minimis* threshold. DOSCO Calc. Memo at 4. Thus, Commerce determined that the standard average-to-average method could not account for the differences demonstrated by the Cohen's *d* test.

## IV. ARGUMENT

For the reasons discussed below, this Court should affirm the final results of Commerce's 2019-2020 administrative review of the AD order on HWR from Korea.

### A. Standard of Review

When reviewing Commerce's antidumping determinations, the court must affirm Commerce's determinations, findings, and conclusions unless they are "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1307-08 (Fed. Cir. 2001). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cisco Sys., Inc. v. Int'l Trade Comm'n*, 873 F.3d 1354, 1361 (Fed. Cir. 2017) (citation omitted). In reviewing an agency determination for substantial evidence, it is axiomatic that the court "may not reweigh the {record} evidence or substitute its own judgment for that of the agency." *Itochu Bldg. Prods., Co. v. United States*, 163 F. Supp. 3d 1330, 1333-34 (Ct. Int'l Trade 2016) (quotation omitted); *accord Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1376 (Fed. Cir. 2015) ("While Appellants invite this court to reweigh this evidence, this court may not do so.").

In addition, the Federal Circuit has recognized that Commerce is entitled to significant deference when interpreting and applying the antidumping statute. "Antidumping and

countervailing duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 764 (Fed. Cir. 2012) (citation omitted). To that end, the "antidumping statute reveals tremendous deference to the expertise of the Secretary of Commerce in administering the antidumping law." *Id.* (citation omitted). "This deference is both ***greater than*** and ***distinct*** from that accorded the agency in interpreting the statutes it administers, because it is based on Commerce's technical expertise in identifying, selecting and applying methodologies to implement the dictates set forth in the governing statute{.}" *Id.* (emphasis added) (citation omitted).

### B. Plaintiffs Failed to Exhaust Their Administrative Remedies Regarding the Cohen's *d* Test

Under the doctrine of exhaustion of administrative remedies, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000) (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). A party fails to exhaust its administrative remedies where it fails to raise an issue before the agency at the appropriate time. *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1384 (Fed. Cir. 2008). "{J}udicial review of administrative action is inappropriate" where a party fails to exhaust its administrative remedies. *Sharp Corp. v. United States*, 837 F.2d 1058, 1062 (Fed. Cir. 1988). Thus, a party may not raise an issue before the court when the party failed to raise the arguments before Commerce. *Essar Steel, Ltd. v. United States*, 753 F.3d 1368, 1374-75 (Fed. Cir. 2014).

The doctrine of exhaustion of administrative remedies serves the interests of administrative efficiency and fairness. Therefore, the doctrine "is well established in the jurisprudence of administrative law." *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015)

(citing *McKart*, 395 U.S. at 193). The exhaustion requirement enables Commerce "to perform functions within its special competence — to make a factual record, to apply its expertise, and to correct its own errors," *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998) (citing *Parisi v. Davidson*, 405 U.S. 34, 37 (1972)). Furthermore, "{s}imple fairness . . . requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred *against objection made at the time appropriate under its practice*." *Mittal Steel Point*, 548 F.3d at 1383-84 (citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).

This Court generally "takes a strict view" of the exhaustion requirement "before Commerce in trade cases." *JBF RAK LLC v. United States*, 790 F.3d 1358, 1366 (Fed. Cir. 2015) (citations and quotations omitted). Congress has codified the doctrine, and requires that "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). This statutory mandate "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (quotations omitted); *see also Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.") Furthermore, the exhaustion requirement is "explicitly imposed by the agency as a prerequisite to judicial review." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (citing 19 C.F.R § 351.309(c)(2) (the "case brief must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results")).

The Federal Circuit applies exceptions to the doctrine narrowly. *Palladian Partners, Inc.*, 783 F.3d at 1256 n.3. For example, the futility exception allows parties to maintain its argument rather

than going through "obviously useless motions" but "{t}he mere fact that an adverse decision may have been likely" is insufficient to qualify for the exception. *Corus Staal*, 502 F.3d at 1379 (quotations omitted).

Here, judicial review of the differential pricing analysis and the Cohen's *d* test is inappropriate. Plaintiffs failed both to provide to Commerce the academic literature upon which it bases its argument, and also to raise these arguments before Commerce. In doing so, Plaintiffs prevented Commerce from applying its expertise to arguments related to the Cohen's *d* test.

The arguments raised by Plaintiffs here rely heavily on academic literature regarding statistics and effect sizes from academics such as Coe, Cohen, Grissom and Hogarty. Yet, Plaintiffs utterly failed to place the academic literature on the record for Commerce's consideration, or briefing by interested parties. These arguments regarding the statistical validity of the Cohen's *d* test are squarely within the expertise of Commerce as the "master of the anti-dumping law{.}" *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (quotations omitted). Even if Plaintiffs expected an adverse decision at the administrative stage, such an expectation does not excuse Plaintiffs failure to exhaust their administrative remedies.

Plaintiffs rely heavily on *Stupp* to support their claims, yet this case only serves to emphasize Plaintiffs' failure to exhaust their administrative remedies. The Federal Circuit published *Stupp* on July 15, 2021. The deadline for factual information in this review was August 31, 2021, nearly 7 weeks after the *Stupp* decision. Plaintiffs have no excuse for failing to place this literature on the record and then making arguments based on the literature.

C. **Cohen's *d* Test Is Reasonable**

Even if the Court examines Plaintiffs' arguments as to the Cohen's *d* test—which it should not—the Cohen's *d* test and the differential pricing analysis are reasonable methodologies for Commerce to fulfill its statutory obligations. The Court should not substitute its judgement for the

agency. Furthermore, Plaintiffs misread both *Stupp* and the academic literature on which they have built their argument.

Plaintiffs claim the statistical requirements of normality, equal variance and sufficient sample size are not present in this case, and therefore Commerce's determination is unreasonable. This argument is fundamentally wrong. As an initial matter, the *Stupp* court did not require Commerce to demonstrate explicit support in the academic literature for Commerce's use of the Cohen's *d* test, but rather remanded for further explanation. *See generally Stupp*, 5 F.4th 1341. Commerce has provided that further explanation to the Court. *See* Final Results of Redetermination Pursuant to Ct. Remand, *Stupp Corp. v. United States*, Consol. Ct. No. 15-00334 (Ct. Int'l Trade Apr. 4, 2022), ECF No. 208-1 ("*Stupp* Remand Results"). The assumptions of normality, equal variance and sufficient sample size are required for sampled data in inferential statistics precisely because the statistician utilizes sampled data to infer the parameters of an entire population; where the data set contains the entire population, no estimates—and therefore no assumptions to ensure the reliability of the estimates—are necessary. *Id.* at 13-16.

The academic literature supports Commerce's remand determination. When doing any data calculation, having the entire population as the dataset is better than a representative sample; there are no inferences drawn, and no risk of misrepresenting the population. According to Professor Paul Ellis, "{t}he best way to measure an effect is to conduct a census of an entire population but this is seldom feasible in practice." Paul D. Ellis, *The Essential Guide to Effect Sizes: Statistical Power, Meta-Analysis, and the Interpretation of Research Results* (Cambridge University Press, 2010) at 5, cited in *Stupp* Remand Results at 13. When working with a population, the actual parameters of the population, including the mean and standard deviation, are known rather than having to be inferred. The assumptions of normality and equal variance are

Ct. No. 22-00142

crucial to working with sample data, as Commerce explained, precisely because they are being used to support inferences about the larger whole. *Stupp* Remand Results at 28-29, 51-52. Absent these assumptions, a statistician could not reliably infer the parameters of the larger population, and could not reliably calculate the effect size. But when the entire population is present, there is no need for inferences, and the assumptions are therefore irrelevant because the parameters can be definitively calculated. *See id.* at 18-19, 40. This definitive calculation of the entire population renders the assumptions of normality, equal variance and sample sizes irrelevant to Commerce's inquiry and analysis.

## V. CONCLUSION

We incorporate by reference the arguments made in the brief of Defendant United States. For the reasons detailed above and in the Government's brief, Nucor Tubular respectfully submits that this Court should affirm in full the final results of Commerce's 2019-2020 administrative review of the AD order on HWR from Korea.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Jake R. Frischknecht, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Defendant-Intervenor Nucor Tubular Products Inc.*

Dated: December 21, 2022

CERTIFICATE OF COMPLIANCE

      Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Nucor Tubular Product Inc.'s Response to Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 2,889 words.

          /s/ Alan H. Price
        (Signature of Attorney)

           Alan H. Price
         (Name of Attorney)

     Nucor Tubular Products Inc.
        (Representative Of)

       December 21, 2022
            (Date)