UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| _____ ) | |
| HISTEEL CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| DONG-A-STEEL CO., LTD, ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | Court No. 22-00142 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| NUCOR TUBULAR PRODUCTS INC. ) | |
| ) | |
| Defendant-Intervenor. ) | |
| _____ | |

REPLY BRIEF OF
HISTEEL CO., LTD.

PUBLIC VERSION

PROPRIETARY INFORMATION DELETED
FROM PAGES 10, 11, 12, AND 16

WINTON & CHAPMAN PLLC
1900 L Street, N.W., Suite 611
Washington, D.C.  20036
(202) 774-5500

Attorneys for HiSteel Co., Ltd.

January 18, 2023

Table of Contents

Page

ARGUMENT ................................................................................................ 2

    A.   Commerce's "Differential Pricing Analysis" ...................................... 2

        1.   HiSteel Did Not Fail to Exhaust Its Administrative
             Remedies Regarding its Arguments on the DPA .......................................... 3

             a.   The CAFC's Decision in Stupp is Not Dependent
                 on Academic Material Being Placed on the Record...................... 4

             b.   Commerce Had an Opportunity to
                 Address HiSteel's Arguments During the
                 Underlying Administrative Proceeding ......................................... 6

        2.   HiSteel's Reliance on Stupp Is Not Misplaced ............................................ 7

             a.   Commerce Did Not Address the CAFC's
                 Concerns in Stupp in its Final Determination .............................. 7

             b.   Commerce's Explanations in Separate
                 Proceedings Are Irrelevant and Still Fail
                 to Address the Concerns Raised in Stupp..................................... 7

             c.   The Government Improperly Relied on
                 the CAFC's Decision in Mid Continent ........................................ 9

    B.   Slitting Services Provided by Hanil to HiSteel ................................. 10

        1.   Record Evidence Confirms Slitting Fees Charged by Hanil
             Correlated to the Characteristic of the Service Requested ......................... 11

        2.   Commerce Does Not Have an Established Practice
             of Adjusting the Price of Slitting Services from Hanil............................... 12

    C.   Pipe Scrap Sold by HiSteel to Hanil................................................ 13

        1.   Government's Claim that Prices were Not Equivalent
             After Accounting for Differences in the Terms of Sale
             to Hanil and Unaffiliated Customers in False ............................................ 15

        2.   Commerce Failed to Justify
             Adjustment to HiSteel's Scrap Offset ....................................................... 16

3.   HiSteel's Arguments that Pipe and Skelp
     Scrap Have Different Physical Properties
     Are Not Barred by Exhaustion ................................................................. 18

CONCLUSION ............................................................................................................. 20

Table of Authorities

Page

<u>C</u>ASES

*Ames True Temper v. United States*,
31 C.I.T. 1303 (2007).................................................................. 17

*Canadian Solar Int'l Ltd. v. United States*,
532 F. Supp. 3d 1273 (Ct. Int'l Trade 2021) .............................. 7

*Diamond Sawblades Manufacturers' Coalition v. United States*,
986 F. 3d 1351 (Fed. Cir. 2021).................................................. 18

*Essar Steel, Ltd. v. United States*,
753 F.3d 1368 (Fed. Cir. 2014)................................................... 19

*Evonik Rexim (Nanning) Pharm. Co. v. United States*,
253 F. Supp. 3d 1364 (CIT 2017) ............................................... 5

*Huvis Corp. v. United States*,
31 C.I.T. 1803 (2007).................................................................. 13

*Jacobi Carbons AB v. United States*,
313 F. Supp. 3d 1344 (Ct. Int'l Trade 2018) .............................. 11

*Juancheng Kangtai Chem. Co. v. United States*,
37 ITRD 2011 (Ct. Int'l Trade 2015)........................................... 20

*POSCO v. United States*,
296 F. Supp. 3d 1320 (Ct. Int'l Trade 2018) .............................. 9

*Qingdao Taifa Grp. Co. v. United States*,
637 F.Supp.2d 1231 (Ct. Int'l Trade 2009)................................. 19

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) ..................................................................... 8

*Solvay Solexis SpA. v. United States*,
637 F.Supp.2d 1306 (Ct. Int'l Trade 2009)................................. 20

*Stupp Corp. v. United States*,
5 F.4th 1341 (Fed. Cir. 2021)...................................... 2, 4, 5, 9

*Trust Chem Co. Ltd. v. United States*,
791 F.Supp.2d 1257 (Ct. Int'l Trade 2011)................................. 20

A<small>DMINISTRATIVE</small> D<small>ECISIONS</small>

*Circular Welded Non-Alloy Steel Pipe from Korea;*
  *Final Results of Antidumping Duty Administrative Review*,
  63 Fed. Reg. 32833 (June 16, 1998) ............................................................................. 13

*Stainless Steel Wire Rod from the Republic of Korea:*
  *Final Results of Antidumping Duty Administrative Review*,
  69 Fed. Reg. 19153 (April 12, 2004) ............................................................................ 13

S<small>TATUTES AND</small> R<small>EGULATIONS</small>

19 U.S.C. § 1677b(f)(2) ..............................................................................................*inter alia*

PUBLIC VERSION

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| HISTEEL CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| DONG-A-STEEL CO., LTD, ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | Court No. 22-00142 |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| NUCOR TUBULAR PRODUCTS INC. ) | |
| ) | |
| Defendant-Intervenor. ) | |

REPLY BRIEF OF
HISTEEL CO., LTD.

This brief is submitted on behalf of HiSteel Co., Ltd. ("HiSteel") in reply to the

Response Briefs submitted by Defendant (hereinafter "the Government") and Defendant-

Intervenor (hereinafter "Nucor") in the appeal of the final determination by the U.S.

Department of Commerce ("Commerce") in the fourth administrative review of the

antidumping order on Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes

from the Republic of Korea.[1]

---

[1] *See* Government's December 21, 2022, Response to Plaintiff's Motion of Judgment on
the Agency Record (ECF No. 49 and 50) (hereinafter "Government's Brief").  *See also*
*(footnote continued on following page)*

<u>ARGUMENT</u>

A.    *Commerce's "Differential Pricing Analysis"*

In its Final Determination in the instant review, Commerce used its Differential

Pricing Analysis ("DPA") to justify its calculation of an "alternate" overall dumping

margin for HiSteel using a methodology that applied an "average-to-transaction"

comparison for all of HiSteel's U.S. sales.[2]  However, the Court of Appeals for the Federal

Circuit ("CAFC") has held in the *Stupp* decision that the agency's DPA calculation can

only be sustained if it is reasonable.[3]  Under that standard, the CAFC explained that the

DPA may be applied only if Commerce provides analysis showing why the cut-offs used,

namely the 0.8 cut-off for the "Cohen's *d"* test, provide an appropriate measure in the

specific case.[4]  In that regard, the CAFC stated that when Commerce purports to apply a

mathematical tool in a manner that is inconsistent with the tool's assumptions, it must

justify why it may depart from those underlying assumptions.[5]  As explained in HiSteel's

brief in support of its Rule 56.2 motion (hereinafter "Initial Brief"), Commerce failed to

---

*(footnote continued from previous page)*
Nucor's December 21, 2022, Response to 56.2 Motion For Judgment upon the Agency
Record (ECF No. 48) (hereinafter "Nucor's Brief").

[2] Commerce's April 1, 2022, Final I&D Memo at 14-15 (Public Record ("PR")-241).

[3] S*ee Stupp Corp. v. United States*, 5 F.4th 1341, 1353 (Fed. Cir. 2021) (explaining that the
relevant standard for reviewing Commerce's DPA is reasonableness).  *See also Mid
Continent Steel & Wire, Inc. v. United States*, 31 F.4th 1367, 1377 (Fed. Cir. 2022) (citing
*Stupp*, 5 F.4th at 1357–60).

[4] *See id*. at 1357-60 .

[5] *See id*. at .

meet that burden in this case.[6]  Consequently, Commerce's Final Determination must be remanded for reconsideration consistent with the CAFC's judgment in *Stupp*.

In response, the Government and Nucor (collectively "Defendants"), contend that HiSteel's arguments based on the CAFC's decision in *Stupp* are barred by the doctrine of administrative exhaustion.  In addition, Defendants claim that Commerce's Final Determination is consistent with the requirements of *Stupp*.  However, as explained below, Defendants' arguments are without merit.

1. *HiSteel Did Not Fail to Exhaust Its Administrative Remedies Regarding its Arguments on the DPA*

Defendants claim that judicial review of Commerce's DPA and the use of the Cohen's *d* test under the standard set forth in *Stupp* is inappropriate, because the academic material in the *Stupp* decision that are cited in HiSteel's initial brief are not on the administrative record of this case.[7]  Furthermore, Defendants claim that Commerce was unable to address the issues related to the Cohen's *d* test based on *Stupp*, because HiSteel did not raise those arguments before Commerce during the underlying review.[8]  As such, Defendants assert that HiSteel's arguments are barred under the doctrine of administrative exhaustion.[9]  However, Defendants' claims are incorrect and misunderstand both the *Stupp* decision and the underlying record.

---

[6] *See* HiSteel's October 17, 2022, Initial Brief at 6-15 (ECF Nos. 43 and 44).

[7] *See* Government's Brief at 12-13; Nucor's Brief at 8.

[8] *See id*.

[9] *See id*.

PUBLIC VERSION

> a. *The CAFC's Decision in* Stupp *is Not Dependent on Academic Material Being Placed on the Record*

The Government asserts that the CAFC's decision in *Stupp* was dependent on academic literature that was "timely placed on the record" during that administrative proceeding.[10]  Since HiSteel did not submit that academic material on the record of the administrative proceeding that is the subject of this appeal, the Government argues that HiSteel may not rely on *Stupp* and make arguments based upon such academic material.[11] The Government's understanding of the *Stupp* case is mistaken.

In fact, the CAFC's decision in *Stupp* was not based on the record of the Welded Line Pipe investigation that gave rise to the *Stupp* appeal.  In that case, one of the mandatory respondents attempted to reference various academic texts in its case brief.  In response, Commerce rejected all references to those texts as "new factual information," and required the respondent to resubmit its case brief without those references.  Significantly, the rejection of the respondent's case brief was affirmed by the CAFC in *Stupp*.[12] Nevertheless, the CAFC in *Stupp* relied on various academic texts to support the conclusion that Commerce's use of Cohen's *d* was inconsistent with statistical practice.  In this case, the Government's suggestion that the Court may not consider the same academic texts is contrary to the CAFC's decision in *Stupp*.  In addition, because those academic materials were part of the *Stupp* decision, parties were permitted to set forth arguments

---

[10] *See* Government's Brief at 12.

[11] *See id*. at 12-13.

[12] *See Stupp*, 5 F.4th at 1350-51 .

explaining how Commerce's Final Determination in this case did not meet the standards identified in those academic materials.[13]

For its part, Nucor argues that administrative exhaustion bars judicial review, because HiSteel had an opportunity to file new factual information in this proceeding after the *Stupp* decision was released.[14]  However, as explained above, the *Stupp* decision was not dependent on academic material placed on the record.  Instead, the CAFC held that Commerce must explain how its application of the DPA it is consistent with the statistical requirements of the test even when such academic material is not on the record.

In addition, it should be noted that the CACF's decision in *Stupp* did not require Commerce to reopen the record on remand to add the academic material cited by the court.[15]  Instead, the CAFC's July 15, 2021, determination in *Stupp* was open-ended and asked that Commerce explain "whether limits on the use of the Cohen's $d$ test prescribed by Professor Cohen and other authorities were satisfied in this case or whether those limits need not be observed when Commerce uses the Cohen's d test in less-than-fair-value adjudications."[16]  It was only on October 29, 2021 — nearly two months after the deadline for the submission of factual information in this proceeding had elapsed — that Commerce decided that it would reopen the record of the *Stupp* remand to permit parties to submit

---

[13] *See e.g.*, *Evonik Rexim (Nanning) Pharm. Co. v. United States*, 253 F. Supp. 3d 1364, 1374 (CIT 2017), aff'd, 771 F. App'x 484 (Fed. Cir. 2019) (finding that legal argument contained in a respondent's case brief, including descriptions relevant to the argument, is not "new factual information") .

[14] *See* Nucor's Brief at 8.

[15] *See Stupp,* 5 F.4th at 1360 .

[16] *Id* .

academic material related to the proper application of the DPA.[17]  In these circumstances, HiSteel was neither on notice nor was it required to place the academic literature on the record of this proceeding based on the CAFC's decision in *Stupp*.

> b. *Commerce Had an Opportunity to Address HiSteel's Arguments During the Underlying Administrative Proceeding*

As mentioned, Defendants also assert that HiSteel failed to argue that Commerce's application of its DPA is mathematically unsound and inconsistent with *Stupp* during underlying administrative.[18]  That assertion is false.  HiSteel's November 17, 2021, case brief explained in detail that Commerce's DPA methodology, including the use of Cohen's *d*, is unreasonable because it is contrary to recognized and widely adopted statistical principles, not supported by substantial evidence on the record, and contrary to the CAFC's findings in *Stupp*.[19]  In these circumstances, Commerce did in fact have an opportunity to address HiSteel's arguments during the underlying review, and neither the Government nor Nucor have identified any basis for the Court to disregard HiSteel's arguments regarding the Cohen's *d* test.

---

[17] *See Stupp Corp. v. United States*, Court No. 15-00334, Commerce's April 4, 2022, Final Remand Redetermination (ECF No. 208-1) at 8 and notes 31 and 32 (hereinafter "*Stupp* Redetermination").

[18] *See* Government's Brief at 13; Nucor's Brief at 8.

[19] *See* November 17, 2021, Case Brief of Dong-A Steel Co., Ltd. and HiSteel (PR-218, Confidential Record ("CR")-221); February 25, 2022, Redacted Case Brief of Dong-A Steel Co., Ltd. and HiSteel (PR-239, CR-228).

PUBLIC VERSION

     2.    *HiSteel's Reliance on <u>Stupp</u> Is Not Misplaced*

Defendants contend that HiSteel's reliance on *Stupp* is misplaced because the CAFC did not find that Commerce's DPA was unlawful, but only remanded the proceeding for further explanation, which Commerce has provided.[20]  Their assertion is untenable.

     a.    *Commerce Did Not Address the CAFC's*
              *Concerns in <u>Stupp</u> in its Final Determination*

First, Defendants argue that Commerce provided an adequate further explanation in the Final Determination in this case.  Specifically, Defendants rely on Commerce's assertion in its Final Determination that the statistical assumptions discussed in *Stupp* are not relevant in this administrative review because Commerce used the entire population of data to conduct its DPA analysis.[21]  However, as explained in our initial brief, that argument was already considered and rejected by the CAFC in *Stupp*.[22]  As a result, Commerce's Final Determination failed to provide the further explanation required by *Stupp*.[23]

     b.    *Commerce's Explanations in Separate*
              *Proceedings Are Irrelevant and Still Fail*
              *to Address the Concerns Raised in <u>Stupp</u>*

Next, Defendants attempt to provide additional support to Commerce's determination in this proceeding by citing to Commerce's explanations in the *Stupp* remand proceeding and the second administrative review of the antidumping order on *Oil Country Tubular*

---

[20] *See* Government's Brief at 11; Nucor's Brief at 9.

[21] *See* Government's Brief at 13-14; Nucor's Brief at 8-9.

[22] *See* HiSteel's Initial Brief at 12-13.

[23] *See e.g.*, *Canadian Solar Int'l Ltd. v. United States*, 532 F. Supp. 3d 1273, 1278 (Ct. Int'l Trade 2021) ("{O}n remand Commerce was required to provide an additional explanation…beyond its prior explanations rejected by the Court of Appeals.") .

*Goods from Korea* (which is also currently on remand for reconsideration consistent with *Stupp*).[24] As a preliminary matter, Commerce's explanations in those separate proceedings misrepresent relevant academic texts, are mathematically incorrect, and still fail to address the concerns raised by the CAFC in *Stupp*.[25] Given these errors and the fact that the Court has not upheld Commerce's remand redeterminations in those cases, Commerce's explanations in those separate proceedings have no bearing on this case.

Furthermore, Commerce's Final Determination in this case did not rely on the explanations set forth in those separate proceedings.[26] And, significantly, Commerce gave different explanations for use of the DPA and Cohen's *d* test in each case.[27] It is well-settled that an agency's determination may only be sustained based on the reasoning the agency itself provides in the specific decision under review.[28] Therefore, Commerce's additional explanations set forth in the *Stupp* remand proceeding and in the proceeding

---

[24] *See* Government's Brief at 13; Nucor's Brief at 9-10.

[25] *See Stupp Corp. v. United States*, Court No. 15-00334, SeAH Steel Corporation's June 14, 2022, Comments on Final Remand Redetermination at 6-36 (ECF Nos. 216 and 217); SeAH Steel Corporation's September 28, 2022, Reply Comments at 10-31 (ECF No. 236); and SeAH Steel Corporation's November 14, 2022, Response to Defendant's Sur-Reply at 16-38 (ECF Nos. 244 and 245). *See also Nexteel Co., Ltd. v. United States*, Court No. 18-00083, SeAH Steel Corporation's December 2, 2022, Comments in Partial Opposition to Final Remand Redetermination (ECF Nos. 123 and 124).

[26] *See* Final I&D Memo at cmt. 2.

[27] *Compare* Final I&D Memo at 19-21 *with Stupp* Redetermination and *Nexteel Co., Ltd. v. United States*, Court No. 18-00083, Commerce's October 21, 2022, Final Remand Redetermination at 16-21 and 58-74 (ECF Nos. 123 and 124) (noting that Commerce's reasoning in the *Oil Country Tubular Goods from Korea* second administrative review remand redetermination differed from the agency's reasoning in the *Stupp* remand redetermination).

[28] *See e.g.*, *SEC v. Chenery Corp.*, 318 U.S. 80, 95, 63 S.Ct. 454, 87 L.Ed. 626 (1943) ("{A}n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained.") .

PUBLIC VERSION

concerning the second administrative review of the antidumping order on *Oil Country Tubular Goods from Korea* are irrelevant to this appeal and may not be considered by this Court.[29]

### c. The Government Improperly Relied on the CAFC's Decision in <u>Mid Continent</u>

Finally, the Government also asserts that because the CAFC held in *Mid Continent* that use of the 0.8 cutoff in its DPA is reasonable, Commerce's application of the Cohen's *d* test in this case was proper.[30]  However, the *Mid Continent* decision pre-dates *Stupp*.  In fact, the CAFC explicitly stated in *Stupp* that the *Mid Continent* decision did not address whether the 0.8 cutoff was reasonable when applied to data that does not follow the underlying statistical assumptions used by Professor Cohen,[31] and Commerce itself has acknowledged that the *Stupp* decision held that *Mid Continent* was not applicable.[32]  In

---

[29] *See POSCO v. United States*, 296 F. Supp. 3d 1320, 1360 note 58 (Ct. Int'l Trade 2018) ("{R}easoning that is offered post hoc, in briefing to the court or during oral argument, is not properly part of this court's review of the agency's underlying determination when such reasoning is not discernable from the record itself.") .

[30] *See* Government's Brief at 14-15.

[31] *See Stupp*, 5 F.4th at 1357 .

[32] In the *Stupp* Redetermination, Commerce explained the CAFC's decision in *Stupp*:

> SeAH has two arguments: … Second, SeAH argues that Commerce's application of the 0.8 cutoff in this case was unsupported by evidence because Professor Cohen's suggestion that "0.8 could be considered a 'large' effect size" was limited to comparisons involving data that met certain restrictive conditions —" in particular, that the datasets being compared had roughly the same number of data points, were drawn from normal distributions, and had approximately equal variances. (quoting Stupp, 5 F.4th at 1356)

With respect to the second argument, *the CAFC found that it was not addressed in Mid Continent 2019 and construed that argument as part of SeAH's challenge to Commerce's use of Cohen's d test*.  *See Stupp* Redetermination at 17.

these circumstances, the Government's argument that *Mid Continent* supports Commerce's application of the 0.8 cutoff in this case is patently false.

In the end, Defendants have failed to provide any legitimate argument in response to the issues with Commerce's application of the DPA in this case that HiSteel raised in its initial brief.  Since this Court and the CAFC have determined that remand is necessary in all cases where Commerce's use of Cohen's *d* in its DPA presents "identical concerns" to those raised in *Stupp,* and the issues with that calculation raised by the *Stupp* court are present in this case as well, the Court must remand this matter for reconsideration by Commerce.[33]

###### B.    Slitting Services Provided by Hanil to HiSteel

During the underlying administrative review, Commerce applied the "transactions disregarded rule" to determine whether the slitting service (*i.e.*, cutting various types of steel coils into skelp) HiSteel obtained from its affiliated Hanil Iron & Steel Co., Ltd. ("Hanil") fairly reflected market price and was made at arm's length.  As explained in HiSteel's initial brief, record information demonstrates that the prices Hanil charged its customers was based on the [

                    ]), and that Hanil used the same pricing schedule to determine the price it charged HiSteel and unaffiliated purchasers for all slitting services.[34]  Because the evidence demonstrates that identical rates were charged to affiliated and unaffiliated parties for the same service, the record sufficiently establishes that the transaction with Hanil for slitting services were at arm's length under Department practice, and no

---

[33] *See* HiSteel's Initial Brief at 5-11.

[34] *See id*. 15-20.

adjustment is warranted.[35]  The Government, nevertheless, asserts that:  (1) the evidence on the record does not establish that Hanil's pricing schedule was correlated with the characteristic of the slitting service and (2) Commerce's determination to adjust the price of the slitting services that HiSteel obtain from Hanil was consistent with its past practice in this proceeding.  Defendant's arguments are, however, without merit.

> 1.  *Record Evidence Confirms Slitting Fees Charged by Hanil Correlated to the Characteristic of the Service Requested*

The Government claims that Commerce correctly concluded in its Final Determination that Hanil's price schedule "did not necessarily demonstrate that [

] were the basis for the prices charged to Hanil's customers," because the evidence provided by HiSteel did not demonstrate that Hanil's pricing schedule correlated with the characteristics of the slitting service performed.[36]  However, Commerce's conclusion in its Final Determination and Defendant's argument are both assertions without any analysis or support in the record.[37]

In fact, record evidence clearly demonstrates that for each [          ], Hanil has three tiers of pricing for slitting service based on the [

].  Specifically, the fee schedule establishes that Hanil charged *all* customers:  [    ] KRW/kg for [

]; [    ]

---

[35] *See id*.

[36] Government's Brief at 17.

[37] *See Jacobi Carbons AB v. United States*, 313 F. Supp. 3d 1344, 1362 (Ct. Int'l Trade 2018) (finding that conclusory assertions by Commerce does not satisfy its burden to articulate a rational connection between the facts found and the choice made) .

KRW/kg for [

]; and

[    ] KRW/kg for [                                      ].[38] This

evidence conclusively demonstrates that Hanil pricing schedule was based on [

].  In these

circumstances, Commerce's decision to disregard Hanil's pricing schedule and adjust the

amount HiSteel paid Hanil for slitting service is unreasonable and unsupported by

substantial evidence.

> ### 2. Commerce Does Not Have an Established Practice of Adjusting the Price of Slitting Services from Hanil

The Government also argues that Commerce's "transactions disregard" analysis of the

prices Hanil charged HiSteel for slitting services was consistent with its "practice in

previous administrative reviews of this order."[39]  In support of that argument, the

Government cites to Commerce determination in third administrative review of this

order.[40]  However, the Government failed to explain that the decision in the third

administrative review was the first and only time that Commerce applied its "transactions

disregarded rule" to slitting services that HiSteel obtained from Hanil in this proceeding

and other proceedings in which HiSteel has participated as a respondent.[41]

---

[38] *See* HiSteel's January 25, 2021, Section D Response at 7-8 and Appendix D-3-B (PR-47, CR-20).  *See also* HiSteel's May 13, 2021, Supplemental Questionnaire Response at Appendix SD 8-A (PR-173, CR-147).

[39] Government's Brief at 18.

[40] *See id*.

[41] It should be noted that HiSteel challenged Commerce's adjustment to the slitting services obtained from Hanil in the third administrative as well.  *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From the Republic of Korea*, 86 Fed.

*(footnote continued on following page)*

Significantly, this Court has explained that "Commerce establishes a practice by repeatedly and regularly utilizing a methodology."[42]  Since Commerce has not "repeatedly and regularly" adjusted the price for slitting services obtained from Hanil, there is no established agency "practice" for such an adjustment.  By contrast, Commerce does have a long-standing practice of finding transactions with an affiliated company to be at arm's length when the prices charged were based on a fee schedule applicable to all customers.[43]  Since record evidence demonstrates that the prices Hanil charged HiSteel for slitting services was consistent with its fee schedule applicable to all customers, the Court must remand the matter to Commerce for reconsideration consistent with its past practice.

C.   *Pipe Scrap Sold by HiSteel to Hanil*

As explained in our initial brief, HiSteel sold a small quantity of pipe scrap to Hanil in a single transaction during the review period.[44]  Record evidence demonstrates that the price at which HiSteel sold pipe scrap to Hanil was the same as the price at which HiSteel sold pipe scrap to an unaffiliated customer on the same day.[45]  Furthermore, record

---

*(footnote continued from previous page)*
Reg. 35060 (July 1, 2021), and accompanying I&D Memo at cmt. 15.  However, because HiSteel received a zero percent margin in that review, the issue of Commerce's improper adjustment of the price of slitting service obtained from Hanil was moot and not appealed. *See id.*

[42] *See e.g.*, *Huvis Corp. v. United States*, 31 C.I.T. 1803, 1811 (2007).

[43] *See e.g.*, *Circular Welded Non-Alloy Steel Pipe from Korea; Final Results of Antidumping Duty Administrative Review*, 63 Fed. Reg. 32833 (June 16, 1998) at cmt. 19. *See also e.g.*, *Stainless Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty Administrative Review*, 69 Fed. Reg. 19153 (April 12, 2004), and accompanying I&D Memo at cmt. 5 (because the amount paid reflected the rate schedule used in the marketplace by the affiliate, Commerce concluded that that the record demonstrated that the amount paid to an affiliate reflected arm's length prices).

[44] *See* HiSteel's Initial Brief at 20-23.

[45] *See id.*

evidence confirms that the price that HiSteel charges its customers for pipe scrap is based on the price for pipe scrap announced by an unaffiliated scrap purchaser on the specific date of sale.[46]  As a result, there was no difference in the price of pipe scrap sold by HiSteel to any customer (affiliated or not) on the same date and the price charged by HiSteel was consistent with the rate used in the market on that date.

In these circumstances, Commerce's conclusion that the price at which HiSteel sold pipe scrap to Hanil was not fairly reflective of market prices is not supported by the record. Furthermore, as explained in HiSteel's initial brief, even if Commerce were permitted to disregard the sale of scrap from HiSteel to Hanil, Commerce's revision of HiSteel's scrap offset by adjusting the price HiSteel charged Hanil for *pipe* scrap based on the review-period average price of *pipe and skelp* scrap sold by HiSteel to unaffiliated customers is unreasonable and distortive and must be remanded for reconsideration.

In response, the Government argues that substantial evidence supports Commerce's finding that HiSteel's sale of pipe scrap to Hanil was not fairly reflective of market prices, because Commerce's calculation accounted for the difference in the terms of sale and still found that the price HiSteel charged Hanil was not identical to the price charged to the unaffiliated customer.[47]  In addition, the Government claims that substantial evidence supports Commerce's adjustment to HiSteel's scrap offset for the sale of pipe scrap to Hanil, because Commerce reasonably determined that the record did not support a finding that pipe scrap and skelp scrap are physically different.[48]  Finally, the Government asserts

---

[46] *See id.*

[47] *See* Government's Brief at 20.

[48] *See id.* at 20-21.

PUBLIC VERSION

that HiSteel did not exhaust administrative remedies with respect to its arguments that pipe scrap and skelp scrap have different physical properties.[49]  However, as explained below, none these arguments have any merit.

    1.    *Government's Claim that Prices were Not Equivalent After Accounting for Differences in the Terms of Sale to Hanil and Unaffiliated Customers in False*

The Government asserts that Commerce's calculation in its Final Determination demonstrates that the price that HiSteel charged Hanil was not comparable to the prices charged unaffiliated customers, because Commerce found a difference in the prices charged after controlling for differences in the terms of sale to Hanil and unaffiliated customers.[50]  However, the Government failed to recognize that the record showed that the price of pipe scrap fluctuated significantly and consistently throughout the review period, and that the price of pipe scrap is higher than skelp scrap.[51]  As a result, the purported difference that Commerce calculated by comparing the single sale of pipe scrap from HiSteel to Hanil during the review period to all sales of scrap (*i.e.*, pipe scrap and skelp scrap) from HiSteel to unaffiliated customers during the review period simply reflected the fluctuation of market prices for pipe scrap during the review period and the difference in the market price for pipe scrap and skelp scrap.[52]  Significantly, when these two factors are

---

[49] *See id*. at 19-20.

[50] *See id*. at 20.

[51] *See* HiSteel's Section D Response at Appendix D-7 (PR-47, CR-20).

[52] *See* Commerce's April 1, 2022, Final Calculation Memorandum for HiSteel at 2 (PR-242, CR-229).

also controlled for, record evidence confirms that the price HiSteel charged Hanil was in fact equal to the price HiSteel charged its unaffiliated customer.[53]

Furthermore, as mentioned, the price at which HiSteel sold pipe scrap to all customers was based on the price for pipe scrap announced by an unaffiliated scrap purchaser on the specific date of sale.[54]  In these circumstances, record evidence also demonstrates that the price HiSteel charged Hanil was reflective of the prevailing market price for pipe scrap on the date of sale in Korea.  In these circumstances, Commerce's decision to disregard the sale of pipe scrap from HiSteel to Hanil pursuant to the "transactions disregarded rule" is contrary to the statute, and its subsequent adjustment to the scrap offset for pipe scrap sold by HiSteel to Hanil is unlawful.[55]

### 2. Commerce Failed to Justify Adjustment to HiSteel's Scrap Offset

Despite this evidence, the Government argues that Commerce's adjustment to HiSteel's scrap offset for the sale of pipe scrap to Hanil was reasonable.  In that regard, the Government asserts that the burden was on HiSteel to demonstrate entitlement for a particular adjustment.[56]  Because Commerce asserted that HiSteel did not provide

---

[53] *See* HiSteel's May 13 Supplemental Response, Appendix SD-9 at 3 (PR-173, CR-147).

   As demonstrated in that appendix, the sale of pipe scrap to Hanil was made on a [          ] basis, while the sale of pipe scrap to the unaffiliated customer on the same day was made on a [          ] basis.  Once the difference in the terms of sale of pipe scrap on the same day is accounted for, the per unit price of pipe scrap sold to Hanil and the unaffiliated customer is the same (*i.e.*, [     ] Korean Won per kilogram).

[54] *See id*. at Appendix SD-9 (PR-173, CR-147).

[55] *See* 19 U.S.C § 1677b(f)(2) (only permitting Commerce to disregard transactions between affiliated persons if those transactions do not fairly reflect the value in the market under consideration).

[56] *See* Government's Brief at 19.

information on the record demonstrating that the physical properties of the two types of scrap were different, the Government claims that HiSteel failed to establish that Commerce's adjustment to HiSteel's scrap offset based on the combined, average price of pipe and skelp scrap during the review period was unreasonable.[57]  However, as the Government admits, there is no dispute that HiSteel met its burden and is entitled to a scrap offset.[58]  The issue is, instead, whether Commerce's adjustment to the normally calculated scrap offset for HiSteel was lawful, reasonable, and supported by substantial evidence.[59]  The answer is no.

As explained above, before Commerce may make any adjustment to the price of a related party transaction, it must find that the transaction between a company and its affiliate does not fairly reflect the market price.[60]  Since record evidence demonstrates that the price HiSteel charged Hanil for pipe scrap was equal to price charged its unaffiliated customer on the same date and that price was reflective of the prevailing market price for pipe scrap on the date of sale in Korea, the statute does not permit any adjustment to HiSteel's scrap offset.

Furthermore, even if there were some basis for adjusting the scrap offset, any such adjustment would still have to be reasonable and supported by substantial evidence.[61]  Commerce claimed that using the combined, average price of pipe and skelp scrap during

---

[57] *See id.*

[58] *See id.* at 18.

[59] *See e.g.*, *Ames True Temper v. United States*, 31 C.I.T. 1303, 1309 (2007) (explaining that Commerce's scrap offset calculation methodology must be reasonable and supported by substantial evidence) .

[60] *See* note 55 above.

[61] *See* note 59 above.

the review period to adjust HiSteel's scrap offset was justified by the fact that the record does not demonstrate that the two types of scrap have different physical properties.[62] However, as explained in HiSteel's initial brief, Commerce's claim is inconsistent with the record.  The record does in fact demonstrate that pipe scrap and skelp scrap have different physical properties.[63]  Consequently, Commerce's adjustment to the price of pipe skelp sold to Hanil is unreasonable and fails to be supported with substantial evidence on the record.[64]

### 3. HiSteel's Arguments that Pipe and Skelp Scrap Have Different Physical Properties Are Not Barred by Exhaustion

Finally, the Government argues that HiSteel did not explain that pipe scrap and skelp scrap had different physical properties in its submissions during the underlying proceeding, and that HiSteel's explanations in its initial brief are, therefore, barred by the requirement of administrative exhaustion.[65]  However, the first time that Commerce asserted that the record did not demonstrate that pipe scrap and skelp scrap had different physical properties was in its Final Determination.[66]  It is well-established that when Commerce does not address an issue until its final determination, the doctrine of exhaustion does not apply

---

[62] *See* Final I&D Memo at 57 (PR-241).

[63] *See* HiSteel's Initial Brief at 22-23.

[64] *See e.g.*, *Diamond Sawblades Manufacturers' Coalition v. United States*, 986 F. 3d 1351, 1362 (Fed. Cir. 2021). (explaining that substantial evidence requires an agency consider the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence).

[65] *See* Government's Brief at 19.

[66] *Compare* Final I&D Memo at 57 (PR-241) *with* Department's September 30, 2021, Preliminary Decision Memo at 19 (PR-207).

because "the party had 'no opportunity' to raise the issue before the agency."[67] Accordingly, because HiSteel had no opportunity to address whether pipe and skelp scrap share the same physical properties during the administrative proceeding, the doctrine of exhaustion has no application here.

Moreover, even if the doctrine of exhaustion did apply, this Court has explained that "{t}he exhaustion doctrine does not prevent a plaintiff from expanding on an argument based on the final record before the court…"[68]  HiSteel argued during the administrative proceeding that Commerce incorrectly compared the per unit price of scrap sold to Hanil to the average per unit price of all scrap (skelp and pipe scrap) instead of the average per unit price of pipe scrap sold to unaffiliated customers.[69]  That argument is presumed on the assumption that pipe scrap and skelp scrap are different.  HiSteel's citation to record evidence confirming that pipe and skelp scrap have different physical properties in its initial brief for this appeal simply builds upon that argument and responds to claims made by Commerce for the first time in its Final Determination that pipe skelp and skelp scrap are the same.  Such arguments are plainly permitted, and a failure to allow them would deprive HiSteel of a fair opportunity to address the issues raised for the first time in

---

[67] *Essar Steel, Ltd. v. United States*, 753 F.3d 1368, 1374 (Fed. Cir. 2014).  *See also Qingdao Taifa Grp. Co. v. United States*, 637 F.Supp.2d 1231, 1236 (Ct. Int'l Trade 2009) ("A party, however, may seek judicial review of an issue that it did not raise in a case brief if Commerce did not address the issue until its final decision, because in such a circumstance the party would not have had a full and fair opportunity to raise the issue at the administrative level" (citation omitted)).

[68] *See Juancheng Kangtai Chem. Co. v. United States*, 37 ITRD 2011, 42 and n. 50 (Ct. Int'l Trade 2015) (citing *Trust Chem Co. Ltd. v. United* States, 791 F.Supp.2d 1257, 1268 n. 27 (Ct. Int'l Trade 2011) and *Solvay Solexis SpA. v. United States*, 637 F.Supp.2d 1306, 1309 n. 2 (Ct. Int'l Trade 2009)).

[69] *See* HiSteel's November 17, 2021, Case Brief at 7 (PR-219, CR-220).

Commerce's final determination.  In these circumstances, the Court must remand Commerce's adjustment to HiSteel's scrap offset for reconsideration in light of the record evidence that pipe skelp and skelp scrap have different physical properties.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court reject Defendants' arguments, grant HiSteel's motion for judgment on the agency record, and remand this matter to Commerce for disposition in a manner consistent with the judgment of this Court.

Respectfully submitted,

/s/ Jeffrey M. Winton

Jeffrey M. Winton
Michael J. Chapman
Amrietha Nellan
Jooyoun Jeong

WINTON & CHAPMAN PLLC
1900 L Street, N.W., Suite 611
Washington, D.C.  20036
(202) 774-5500

Attorneys for HiSteel Co., Ltd.

January 18, 2023

<u>Certificate of Compliance</u>

Pursuant to the Court's "Standard Chambers Procedures," I, Jeffrey M. Winton, hereby certify that the word count function of the word-processing system used to prepare the foregoing brief indicates that the brief contains 5,389 words including headings, footnotes, and quotations, but not including the cover, caption, table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature block.

/s/ Jeffrey M. Winton

January 18, 2023