NON-CONFIDENTIAL VERSION

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HISTEEL CO., LTD.,<br><br>                     Plaintiff,<br><br>and<br><br>DONG-A-STEEL CO., LTD.,<br><br>                     Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES,<br><br>                     Defendant,<br><br>and,<br><br>NUCOR TUBULAR PRODUCTS INC.,<br><br>                     Defendant-Intervenor. | Before: Hon. Gary S. Katzmann,<br>        Judge<br><br>Court No. 22-00142<br><br>Business Proprietary Information Removed from Pages: 2, 3, Exhibit 1 |

**MOTION TO DISMISS CLAIMS TWO AND THREE
FOR LACK OF SUBJECT-MATTER JURISDICTION**

Pursuant to Court of International Trade Rule 12(b)(1), Defendant-Intervenor Nucor Tubular Products Inc. ("Nucor Tubular") respectfully moves the Court to dismiss Claims Two and Three of the complaint filed by Plaintiff HiSteel Co., Ltd. ("Plaintiff") for lack of subject-matter jurisdiction. Plaintiff has failed to allege any injury-in-fact or redressable injury as to these claims because the alleged calculation errors did not, and cannot, affect the published dumping margin. Therefore, this Court must find the claims nonjusticiable and dismiss them for lack of subject-matter jurisdiction. This motion is timely because an "objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." *Cent. Pines Land Co. v. United States*, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006)).

Court No. 22-00142         BUSINESS PROPRIETARY INFORMATION   NON-CONFIDENTIAL VERSION
                                    HAS BEEN DELETED

## I. BACKGROUND

In the final results of the relevant administrative review, the U.S. Department of Commerce ("Commerce") calculated a 10.24% Weighted-Average Dumping Margin for Plaintiff. *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From the Republic of Korea*, 87 Fed. Reg. 20,390, 20,391 (Dep't Commerce Apr. 7, 2022). In calculating Plaintiff's margin, Commerce utilized the differential pricing analysis to determine that the alternate average-to-transaction comparison methodology ("A-T Method") was appropriate, rather than the standard average-to-average comparison methodology ("A-A Method"). Letter from Sec'y Commerce to The File, re: *Antidumping Duty Administrative Review of Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea: Calculations for HiSteel Co., Ltd. for the Final Results* (Apr. 1, 2022) at 2-3 ("HiSteel Calc Memo"), C.R. 229, P.R. 208. Commerce also made certain adjustments related to Plaintiff's slitting costs and scrap offset. Specifically, Commerce increased Plaintiff's total cost of manufacture by [    ] percent to account for discounted slitting services from an affiliate. *Id.* at 2. And Commerce decreased Plaintiff's scrap offset by [    ] percent to account for higher sales prices to an affiliate affecting [   ] percent of HiSteel's scrap sales. Consistent with the Department's practice, the margin was calculated to the hundredths place (*i.e.* two decimal places).

Plaintiff filed a complaint in this Court challenging three aspects of the final results. Pl.'s Compl. (June 8, 2022), ECF No. 18. Claim One of the complaint alleges that the differential pricing analysis did not satisfy the statutory factors required to apply the A-T Method, and Commerce should have used the A-A Method. *Id.* at 3-4. Claims Two and Three allege that Commerce's adjustment to the total cost of manufacture and scrap offset, respectively, were inappropriate. *Id.* at 4.

2

Court No. 22-00142        BUSINESS PROPRIETARY INFORMATION   NON-CONFIDENTIAL VERSION
                                    HAS BEEN DELETED

While Claim One has the potential to impact Plaintiff's margin, Claims Two and Three cannot have any possible effect in this case [                    ] as to not affect HiSteel's published margin, *i.e.*, HiSteel's margin at the hundredths place. *See* **Exhibit 1**. *See also* Def.'s Post-Oral Argument Resp., (Apr. 5, 2023) ECF No. 68 (noting that "the slitting and scrap accounting issues will not affect the rate of {HiSteel} even if Commerce were to calculate the two issues as HiSteel argues Commerce should"). Because Plaintiff has not identified any injury-in-fact or redressable injury as to those claims, Plaintiff consequently lacks standing as to Claims Two and Three, which must be dismissed for lack of subject-matter jurisdiction. An explanation of the calculations is attached to this motion as **Exhibit 1**.

## II.   LEGAL STANDARDS

The U.S. Constitution limits the federal judiciary to hearing actual cases or controversies. U.S. Const. art. III, § 2, cl.1; *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1171 (Fed. Cir. 2017) (citing *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). Rooted in the traditional understanding of the case or controversy clause is the doctrine of standing to sue in federal court, which acts to "ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, (2016), *as revised* (May 24, 2016). The Supreme Court has explained that "standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Thus, standing is a "threshold question in every federal case, determining the power of the court to entertain the suit" or individual claims. *Id.*

The Federal Circuit has reiterated that "standing is an essential and unchanging part of the case-or-controversy requirement of Article III" and "extends to when a party seeks judicial review of final agency action." *Mil.-Veterans Advoc. V. Sec'y of Veterans Ajfs.*, 7 F.4th 1110, 1121 (Fed.

Cir. 2021) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)). Where a plaintiff lacks standing to pursue a claim, that claim must be dismissed. *Best Mattresses Int'l Co. Ltd. v. United States*, No. 21-281, 2023 WL 2198803, slip op. 23-19 at *2 (Ct. Int'l Trade Feb. 17, 2023) (dismissing Count VI of the complaint for lack of standing).

A plaintiff must satisfy three elements to establish the "irreducible constitutional minimum" of Article III standing. *Mil.-Veterans Advoc.*, 7 F.4th at 1121 (Fed. Cir. 2021) (citing *Lujan*, 504 U.S. at 560 (1992)). *First*, a plaintiff must have suffered an injury-in-fact. *Id. Second*, a causal connection must exist between the alleged injury and the conduct of the defendant. *Id. Third*, it must be likely that the injury the plaintiff suffered will be redressable by the requested judicial relief. *Id.*

### III. ARGUMENT

Here, Plaintiff's claims regarding Commerce's adjustment to the total cost of manufacture and scrap offset fail on prongs one and three. Specifically, Plaintiff has not suffered any injury-in-fact as to Claims Two and Three because the errors alleged in those claims did not alter Plaintiff's margin. Relatedly, Plaintiff has not identified any redressable injury as to Claims Two and Three because a favorable ruling as to those claims can afford Plaintiff no relief. Because adjudication of those claims would thus amount to an improper advisory opinion, this court lacks subject-matter jurisdiction over Claims Two and Three and must dismiss them as nonjusticiable.

### A. Plaintiff Has Not Established Injury-in-Fact Because the Claimed Violations Did Not Affect the Margin

The injury-in-fact requirement "is a hard floor of Article III jurisdiction." *Consumer Watchdog v. Wis. Alumni Rsch. Found.*, 753 F.3d 1258, 1261 (Fed. Cir. 2014) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497, (2009)). A plaintiff suffers injury-in-fact where the injury is "concrete," as opposed to "conjectural or hypothetical." *Mil.-Veterans Advoc.*, 7 F.4th at 1121

4

(Fed. Cir. 2021) (citing *Lujan*, 504 U.S. at 560 (1992)). In other words, the plaintiff's alleged harm must "actually exist{}." *Phigenix*, 845 F.3d at 1171 (citing *Spokeo*, 578 U.S. at 340 (2016)).

"A bare procedural violation, divorced from any concrete harm" is insufficient to satisfy the injury-in-fact requirement. *Spokeo*, 578 U.S. at 341, 136 S. Ct. at 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Put differently, "{t}he mere assertion of a right to have the Government act in accordance with the law is not sufficient, in and of itself, to satisfy the injury requirement." *McKinney v. U.S. Dep't of Treasury*, 799 F.2d 1544, 1550 (Fed. Cir. 1986). Instead, to establish injury-in-fact, a plaintiff must establish that a different determination would result in "some other greater benefit." *Dollison v. Wilkie*, 750 F. App'x 986, 989 (Fed. Cir. 2018). Otherwise, a plaintiff alleges only a "hypothetical injury," which is insufficient. *Id.*; *accord Phigenix*, 845 F.3d at 1175 (Fed. Cir. 2017) (citing *Raines v. Byrd*, 521 U.S. 811, 820 n.3, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (holding that a statutory "right to appeal does not establish" injury-in-fact for purposes of Article III)).

As applied to the trade laws, this Court has confirmed that a plaintiff lacks standing where it challenges a methodology utilized by Commerce that did not affect the published dumping margin. In *Best Mattresses Int'l Co. Ltd. v. United States*, for example, the court found that "the alleged harm of a potentially misapplied {methodology} amounts to a 'bare procedural violation' and does not 'entail a degree of risk sufficient to meet the concreteness requirement'" where "any difference in Commerce's methodology would not have materially impacted the result of the dumping margin." No. 21-281, 2023 WL 2198803, slip op. 23-19 at *2, *10 (Ct. Int'l Trade Feb. 17, 2023) (citing *Spokeo* at 343) (holding Plaintiff lacked standing to challenge use of Cohen's *d* test where the "test is not dispositive to the final dumping margin"). The court thus dismissed the relevant claim as nonjusticiable. *Id.*; *see also PAO Severstal v. United States*, 219 F. Supp. 3d

1411, 1415 (Ct. Int'l Trade 2017) ("Severstal's disagreement with Commerce's AFA application in the underlying proceeding does not overcome the reality that it has not been injured by Commerce's Final Determination."); *Allied Pac. Food (Dalian) Co. v. United States*, 32 C.I.T. 1328, 1365 (2008) ("Allied Pacific has not alleged any injury to itself resulting from the failure of Commerce to recalculate the Section A rate and, specifically, has not shown how that rate will affect the assessment of duties on Allied Pacific's imports of subject merchandise. Allied Pacific therefore lacks standing to challenge the Department's action with respect to that rate.").

Here, Plaintiff has failed to establish any injury-in-fact as to Claims Two and Three because the errors alleged in those claims failed to impact Plaintiff's margin. *See* **Exhibit 1**. In other words, Plaintiff has alleged that Commerce's calculations were done incorrectly, but its disagreement with Commerce's methodology did not result in any actual, concrete harm. Accordingly, Plaintiff has failed to allege an injury-in-fact as to those claims.

B.   **Plaintiff Has Not Alleged A Redressable Injury Because the Claimed Violations Did Not Affect the Margin**

For related reasons, as to Claims Two and Three, Plaintiff has not alleged any injury redressable by a favorable decision from this Court. In addition to alleging an injury-in-fact, a plaintiff must also show that it is likely, rather than merely speculative, that a favorable judicial decision will redress that injury. *Mil.-Veterans Advoc.*, 7 F.4th at 1121.

Here, just as the alleged errors described in Counts Two and Three did not impact Plaintiff's margin in the proceedings below—*i.e.*, did not result in actual injury—correction of those alleged errors likewise cannot prospectively impact Plaintiff's margin. *See* **Exhibit 1**. As a result, it is not only unlikely that Plaintiff's alleged injury would be redressed by a favorable decision as to Counts Two or Three; it is impossible. *Cf. Verson, a Div. of Allied Prod. Corp. v. United States*, 22 C.I.T. 151, 154 (1998) ("As the government has demonstrated, the recalculation

of CV profit based upon the methodology Plaintiffs seek would not alter the duty margin; it would remain at zero. . . . Thus, no live case or controversy exists because there is no actual injury that can be redressed by a favorable judicial decision."); *see also PAO Severstal v. United States*, 219 F. Supp. 3d 1411, 1415 (Ct. Int'l Trade 2017) ("Severstal's desired outcome of a remand would not remediate any actual or imminent injury. . . . Attempts by this court to reconcile Severstal's hypothetical harm would thus constitute an impermissible advisory opinion.").

## IV. CONCLUSION

Because Claims Two and Three have no potential to change Plaintiff's margin, the Court lacks subject-matter jurisdiction over Claims Two and Three and should dismiss them.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Jake R. Frischknecht, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20006
(202) 719-7000

Dated: April 24, 2023

*Counsel to Nucor Tubular Products Inc.*

# Exhibit 1

BUSINESS PROPRIETARY INFORMATION   NON-CONFIDENTIAL VERSION
HAS BEEN DELETED

## Explanation of Adjustment Analysis

In Commerce's final calculation of Plaintiff's margin, Commerce applied an adjustment under the transactions-disregarded rule to account for undervalued slitting charges from an affiliate. To implement this adjustment, Commerce created a "transactions-disregarded adjustment" field ("TDADJ") and effectively increased Plaintiff's cost of manufacturing by [   ] percent. Letter from Sec'y Commerce to The File, re: *Antidumping Duty Administrative Review of Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea: Calculations for HiSteel Co., Ltd. for the Final Results* (Apr. 1, 2022) at 2 ("HiSteel Calc Memo"), C.R. 229, P.R. 208. Commerce also made an adjustment to account for a small amount of scrap sold to an affiliate at an above-market rate. To implement this adjustment, Commerce created a "scrap adjustment" field ("SCRAPADJ") and decreased the value of the scrap offset by [   ] percent. *Id.* Commerce implemented these adjustments by adding the following language to [

] of the Comparison Market SAS Program.

TDADJ = TOTCOM * [   ]

SCRAPADJ = -(SCRAP * [   ]

Commerce calculated a 10.24 percent margin using the A-T Method, and a 7.34% margin using the A-A Method. *Id* at 3. Nucor Tubular tested the effect of the disputed adjustments on the margin by running the margin calculation programs four times. Nucor Tubular first conducted a baseline run that replicated the results from Commerce's final determination. In this first run, both TDADJ and SCRAPADJ were included consistent with Commerce's calculation memorandum. In the second run, Nucor Tubular removed the transactions-disregarded adjustment by setting TDADJ to 0, and made no changes to the baseline SCRAPADJ. In the third run, Nucor Tubular removed the scrap adjustment by setting SCRAPADJ to 0 and made no changes to the

initial baseline TDADJ. In the fourth run, Nucor Tubular set both TDADJ and SCRAPADJ to 0 to remove the combined impact from the calculations.

As shown in the below summary table, TDADJ and SCRAPADJ made no difference to the margin results relied upon by Commerce. The margins calculated under the A-T method were identical across all four runs to the hundredths place.[1] In addition, the margins calculated under the A-A method were identical to the hundredths place across all four runs.

| Run | Description | Margin | |
|---|---|---|---|
| | | A-A | A-T |
| 1 | Final baseline (SCRAPADJ, TDADJ) | 7.34% | 10.24% |
| 2 | Final (SCRAPADJ, No TDADJ) | 7.34% | 10.24% |
| 3 | Final (No SCRAPADJ, TDADJ) | 7.34% | 10.24% |
| 4 | Final (No SCRAPADJ, No TDADJ) | 7.34% | 10.24% |

---

[1] While there is some variation between the runs when looking beyond the hundredths decimal place, this has no practical effect. In antidumping proceedings, the margin relied upon by Commerce, published in the *Federal Register*, and utilized by U.S. Customs and Border Protection, is specific to the hundredth decimal place. Further, even if examined beyond the hundredths decimal place, in all but one instance, the calculated margin increased. The sole exception was Run 3 for the A-T method where the margin decreased by [      ] percentage points.

NON-CONFIDENTIAL VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **HISTEEL CO., LTD.,**<br><br>                    Plaintiff,<br><br>and<br><br>**DONG-A-STEEL CO., LTD.,**<br><br>                    Plaintiff-Intervenor,<br><br>v.<br><br>**UNITED STATES,**<br><br>                    Defendant,<br><br>and,<br><br>**NUCOR TUBULAR PRODUCTS INC.,**<br><br>                    Defendant-Intervenor. | Before: Hon. Gary S. Katzmann, Judge<br><br>Court No. 22-00142 |

### ORDER

Upon consideration of Nucor Tubular Products Inc.'s ("Nucor Tubular") motion to dismiss Claims Two and Three of Plaintiff's complaint for lack of subject matter jurisdiction, it is hereby

**ORDERED** that Nucor Tubular's motion is granted

    SO ORDERED.

                                                                              _____
                                                                              Hon. Gary S. Katzmann, Judge

Dated: _____, 2023
         New York, New York